# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00117-CR

**Perren Boswell, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 62610, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Perren Boswell of the third-degree felony offense of theft from an elderly person over $1,500 but under $20,000. *See* Tex. Penal Code Ann. § 31.03 (West Supp. 2012).[1] The trial court assessed punishment at ten years' imprisonment and ordered that Boswell pay his court-appointed attorney's fees and $5,210 in restitution to his victim. In two issues, Boswell appeals the trial court's judgment ordering him to pay his court-appointed attorney's fees and the trial court's admission of evidence of subsequent bad acts presented to the jury at trial. We will modify the judgment as to the order requiring that Boswell pay his court-appointed attorney's fees and otherwise affirm the judgment of conviction.

---

[1] Because recent amendments to the penal code and code of criminal procedure did not change the substance of the statutes relevant to this appeal, we cite to their current version.

**BACKGROUND**

On November 26, 2007, Boswell approached 78-year-old Mary Edmondson at her home and offered to resurface her driveway for $2,000. Boswell claimed that he worked for the Texas Department of Transportation (TxDOT), and he assured Edmondson that he could resurface her driveway cheaply because the asphalt he would use was leftover from another highway building project and the labor was already paid for by TxDOT.

Edmondson was skeptical, so Boswell offered to resurface two to three yards of her driveway as a free sample. If Edmondson liked it, Boswell would complete the entire driveway. Edmondson agreed to the free sample and went into her house. When she checked on the project, Boswell's crew had resurfaced half of her driveway. Charles Garland arrived when the driveway was almost completely resurfaced and told Edmondson that she was going to have to pay $8,600, instead of the previously quoted $2,000. Despite the large discrepancy between the quoted price and the final bill, Edmondson wrote a check to Garland for $8,600, which he accepted. Later that evening Edmondson told her daughter what Boswell and Garland had done. Feeling scammed, Edmondson and her daughter called the police.

Deputy Sheriff T.J. Cruz investigated Edmondson's claim of fraud and learned that TxDOT had not approved of any discounted driveway resurfacing and Boswell was not a TxDOT employee. Soon after that discovery, Cruz fielded complaints from a number of other elderly persons who asserted fraud claims identical to Edmondson's claim.

On December 5, 2007, Cruz was alerted to another situation similar to Edmondson's, occurring at the home of Jimmy Koczka. Cruz immediately drove to Koczka's residence where he saw a crew of men preparing to resurface Koczka's driveway. Cruz called Edmondson, who then drove to Koczka's residence and identified Boswell as the same man who solicited her. Edmondson

2

also identified the truck that Boswell claimed TxDOT owned, as well as the truck that Boswell had driven to her house. Boswell was arrested and later indicted for theft from an elderly person over $1,500 but less than $20,000.

Boswell pleaded not guilty and requested a jury trial with any sentencing by the trial court. The jury found Boswell guilty. The trial court assessed punishment as ten years' imprisonment and ordered Boswell to pay court costs, his court-appointed attorney's fees, and $5,210 in restitution to Edmondson. This appeal followed.

## ANALYSIS

### Repayment of court-appointed attorney's fees

In his first issue, Boswell argues that the trial court erred by ordering him to pay his court-appointed attorney's fees. He states that he was indigent from the outset of the trial and his financial status has not changed. Before trial, Boswell completed a financial questionnaire. The trial court found him indigent and appointed an attorney for him. After the judgment required Boswell to pay his court-appointed attorney's fees, Boswell filed a motion supported by an affidavit requesting a free appellate record because of his indigency. The trial court granted the motion, again finding Boswell indigent.

Based on the record, the State concedes that the trial court erred in assessing the court-appointed attorney's fees against Boswell. Under the code of criminal procedure

> [i]f the court determines that a defendant *has* financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs, the court shall order the defendant to pay during the pendency of the charges or, if convicted, as court costs the amount that it finds the defendant *is able* to pay.

Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2012) (emphases added). The trial court's comments in open court when ordering Boswell to pay attorney's fees—and the implicit underlying determination under article 26.05 that he has financial resources to pay attorney's fees—explain the apparent conflict in the pre- and post-trial findings of Boswell's indigency. The trial court stated that Boswell had the ability to earn income upon his release from prison and therefore had the financial resources to pay attorney's fees. However, courts have held that the statute requires a determination of financial resources and ability to pay that is a snapshot assessment of contemporaneous resources and financial ability to pay, not a speculative prediction. *Dominguez v. State*, 363 S.W.3d 926, 935 (Tex. App.—Austin 2012, no pet.) (citing *Roberts v. State*, 327 S.W.3d 880, 883-84 (Tex. App.—Beaumont 2010, no pet.)). That view is supported by the Legislature's use of the present tense—i.e., "*has* financial resources" and "*is* able to pay." Tex. Code Crim. Proc. Ann. art. 26.05(g) (emphases added). The State concedes that the evidence supporting the findings of indigency and the absence of evidence of changed circumstances require that the judgment be modified to delete the order that Boswell pay his court-appointed attorney's fees.

Thus, we sustain Boswell's first issue and modify the trial court's judgment to delete the order requiring Boswell to pay his court-appointed attorney's fees of $4,264.

**Admissibility of extraneous offenses occurring after the charged offense**

In his second issue, Boswell argues that the trial court committed reversible error by allowing testimony of subsequent bad acts—specifically, additional paving jobs—to be presented to the jury. He contends that (1) the extraneous offenses are not admissible under section 31.03(c)(1) of the penal code or Texas Rule of Evidence 404(b), citing *Hegar v. State*, 11 S.W.3d 290 (Tex. App.—Houston [1st Dist.] 1999, no pet.), and (2) the trial court should have applied a

4

balancing test under Texas Rule of Evidence 403 to determine whether the extraneous offenses were more prejudicial than probative.

During trial, the court held a hearing outside the presence of the jury to consider Boswell's objection to testimony regarding extraneous bad acts that occurred after the date of the offense for which Boswell was being tried. The State explained that it was offering the evidence under section 31.03(c)(1) of the Texas Penal Code and Rule 404(b) of the Texas Rules of Evidence. Relying on *Hegar v. State*, Boswell argued that the Texas Penal Code controlled over the Texas Rules of Evidence, and the *Hegar* court held that section 31.03(c)(1) only permits admission of evidence of extraneous bad acts if they occurred before the offense being tried. The trial court overruled Boswell's objection, but later instructed the jury to limit the impact of the testimony regarding extraneous offenses to merely show Boswell's "scheme or plan," "knowledge," and "identity." Boswell later re-urged his objection but further asked that the court conduct a "Rule 403 of the Texas Rules of Evidence balancing test." The trial court overruled the objection again, but granted Boswell's request for a running objection to all testimony about Boswell's extraneous bad acts.

### Standard of review

"An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review." *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The trial court's ruling will be upheld if it is found to be within the zone of reasonable disagreement. *See id.*; *Sexton v. State*, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). If an abuse of discretion is found to have affected a constitutional right, a harm analysis must be utilized to assure beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

Tex. R. App. P. 44.2(a). If the abuse of discretion does not affect a constitutional right, it must be disregarded. Tex. R. App. P. 44.2(b).

**Admissibility under the penal code and rule 404(b)**

Boswell argues that the evidence of a subsequent offense is inadmissible under section 31.03(c)(1) of the penal code as interpreted in *Hegar*. *See* 11 S.W.3d at 296-98. In that case, the trial court convicted Hegar of misdemeanor theft by check after he paid for goods using a checking account that had insufficient funds. *Id.* at 292. On appeal, Hegar challenged the trial court's admission of evidence of his other returned checks, including checks issued after the check giving rise to the charge for which he was convicted. *Id.* at 296. The State argued that the other returned checks were admissible evidence under section 31.03(c)(1) of the penal code (defining theft) and Texas Rule of Evidence 404(b) (concerning evidence of "other crimes, wrongs, or acts"). *Id.* at 297.

The First Court of Appeals considered the plain language of the theft statute, which provides that "[e]vidence that the actor has *previously* participated in recent transactions other than, but similar to that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty." Tex. Penal Code Ann. § 31.03(c)(1) (emphasis added). The *Hegar* court held that the theft statute authorized admission of evidence of transactions occurring before the charged offense, but not those occurring afterward. *Id.* at 297.

The *Hegar* court then considered whether the evidence was admissible under rule 404(b) of the Texas Rules of Evidence. *Id.* Rule 404(b) states

6

Evidence of other crimes, wrongs, or acts may be admissible to provide proof of motive, opportunity, *intent*, preparation, *plan*, *knowledge*, *identity*, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Tex. R. Evid. 404(b) (emphasis added). The court found no time limit for admission of extraneous offenses under Rule 404(b) and held that evidence of extraneous offenses arising from acts that occur after the offense in question was admissible under Rule 404(b). *Hegar*, 11 S.W.3d at 297 (looking to plain language of rule as well as common law embodied in *Albrecht v. State*, 486 S.W.2d 97 (Tex. Crim. App. 1972)). Despite its interpretation of the theft statute, the *Hegar* court saw "no logical reason to confine admissibility of extraneous transactions only to those occurring prior to the charged offense" and held that the subsequent offenses were admissible under the rules of evidence. *Id*.

Boswell argues that section 31.03(c)(1) expressly authorizes only admission of evidence of transactions occurring before the charged offense. *See* Tex. Penal Code Ann. § 31.03(c)(1). That is true, as far as it goes; however, section 31.03(c)(1) is silent regarding the admissibility of evidence of offenses occurring after the charged offense. *See id*. In other words, it does not prohibit admission of subsequent offenses. The limited scope leaves room for the court-made rules of evidence to expressly allow evidence of subsequent transactions to be admitted as crimes, wrongs, or acts used to show the purposes prescribed by the rules of evidence. *See* Tex. R. Evid. 404(b); *see also* Tex. Gov't Code Ann. § 22.109 (West 2004) ("The court of criminal appeals has the full rulemaking power in the promulgation of rules of evidence in the trials of criminal cases, except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant.").

7

This case is analogous to *Hegar*. The trial court in this case admitted extraneous offenses because those offenses provided the jury with proof of Boswell's identity, showed his knowledge, and showed a scheme—all purposes expressly permitted under Rule 404(b). The trial court also complied, via her instructions to the jury, with Boswell's request to limit the purpose of the extraneous-offense evidence to "merely prove, if it does, any sort of scheme, identity, or motive."

Like the court in *Hegar*, we hold that the trial court did not abuse its discretion by admitting extraneous evidence of Boswell's subsequent bad acts to show the permissible factors.

**Rule 403 balancing test**

Boswell also contends that the trial court erred by not conducting a balancing test before allowing the testimony of extraneous offenses. *See* Tex. R. Evid. 403. Texas Rule of Evidence 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id*. When a Rule 403 objection is made and then overruled, the trial court necessarily conducts a balancing test by considering and overruling the objection. *Parmer v. State*, 38 S.W.3d 661, 670 (Tex. App.—Austin 2000, pet. ref'd); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999) (citing *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd)). It is not necessary for a trial court to put its findings and conclusions about a Rule 403 objection on the record. *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996). In *Parmer*, this Court held that when a Rule 403 objection is made and then immediately overruled, the trial court essentially performed a balancing test in that moment.

38 S.W.3d at 670.  A balancing test does not need to be performed on the record to render the balancing test completed.  *Id.*; *Green*, 934 S.W.2d at 104.

Boswell made his Rule 403 objection at trial and the trial court unequivocally overruled his objection.  As in *Parmer*, the trial court in this case performed a balancing test when it decided to overrule Boswell's objection.  At no point did Boswell request that the findings and conclusions of the trial court's balancing test be placed on the record.  Thus, the court is deemed to have conducted a balancing test.  *See Parmer*, 38 S.W.3d at 670.

Because the trial court did not err in allowing testimony about Boswell's subsequent offenses, we overrule Boswell's second issue.  Finding no error in the admission of the subsequent offenses, we need not conduct a harm analysis.

## CONCLUSION

We modify the trial court's judgment of conviction to delete the order requiring Boswell to pay $4,264 for his court-appointed attorney's fees and otherwise affirm the trial court's judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Modified and, as Modified, Affirmed

Filed:   August 23, 2012

Do Not Publish

9