02-12-106-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00106-CR

 

 


 
 
 Lecoreyeon
 Daseon Taylor
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From County Criminal
 Court No. 1
  
 of
 Denton County (CR-2011-06645-A)
  
 March
 14, 2013
  
 Opinion
 by Justice Meier
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
error in the trial court’s judgment.  The portion of the March 8, 2012 judgment
of conviction and sentence ordering Appellant Lecoreyeon Daseon Taylor to pay
costs in the amount of $1,979.50 is modified to reflect that he pay costs in
the amount of $257.00.  It is ordered that the judgment of the trial court is
affirmed as modified.

 

SECOND DISTRICT COURT OF APPEALS

 

 

 

By_________________________________

   
Justice Bill Meier

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00106-CR

 

 


 
 
 Lecoreyeon Daseon Taylor
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM County
Criminal Court No. 1 OF Denton
COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          A
jury convicted Appellant Lecoreyeon Daseon Taylor of assault–family violence
and assessed his punishment at 365 days in jail.  The trial court sentenced him
accordingly.  In two points, Taylor argues that the evidence is insufficient to
support both his conviction and the order requiring him to reimburse the county
for court-appointed attorney’s fees.  We will affirm the judgment as modified.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v.
State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; Blackman v. State, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

          The
trial court ordered Taylor to pay court costs in the amount of $1,979.50. 
Taylor contends, and the State agrees, that of that amount, $1,752.50 is to
reimburse the county for attorney’s fees incurred by his court-appointed trial
counsel.  In his first point, Taylor argues that the evidence is insufficient
to support the order requiring him to pay the attorney’s fees because there is
no evidence that he had the financial ability to do so.

          The
code of criminal procedure provides in relevant part as follows:

          If the court determines that a defendant has
financial resources that enable him to offset in part or in whole the costs of
the legal services provided, including any expenses and costs, the court shall
order the defendant to pay during the pendency of the charges or, if convicted,
as court costs the amount that it finds the defendant is able to pay.

Tex.
Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2012).  “Thus the defendant’s
financial resources and ability to pay are explicit critical elements in the
trial court’s determination of the propriety of ordering reimbursement of costs
and fees.”  Mayer v. State, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010); see
also Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2012) (“A
defendant who is determined by the court to be indigent is presumed to remain
indigent for the remainder of the proceedings in the case unless a material
change in the defendant’s financial circumstances occurs.”).

          The
trial court found before trial that Taylor was indigent and appointed him trial
counsel.  After Taylor’s conviction, the trial court appointed him appellate
counsel and granted his motion for a free reporter’s record on appeal.  We have
reviewed the entire record, and there is no evidence, nor any express or
implied finding or determination by the trial court, that Taylor had sufficient
financial resources to offset the expense incurred by the county for his court-appointed
attorney’s fees.  We sustain Taylor’s first point.  See, e.g.,
Roberts v. State, 327 S.W.3d 880, 883–84 (Tex. App.—Beaumont 2010, no pet.)
(addressing same issue).

          In
his second point, Taylor argues that the evidence is insufficient to show that
he intentionally, knowingly, or recklessly scratched T.V., the complainant,
with his hand.

          A
person commits assault if the person intentionally, knowingly, or recklessly
causes bodily injury to another.  Tex. Penal Code Ann. § 22.01(a)(1) (West
2011).  A person acts recklessly when the person “is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.”  Id. § 6.03(c) (West 2011).

          Jamie
Jones testified that she was working at home on August 24, 2011, when she
heard a lot of honking and screaming coming from outside.  She looked outside
and saw Taylor and Joseph Wilson, neither of whom she knew, in the middle of
the street and someone, possibly a female, in a car.  Jones saw Wilson “trying
to pull” Taylor back from the car, Taylor “breaking free and then going at the
car,” and Taylor lunging and swinging into the car.  This happened—Taylor being
pulled away and then returning to the car, swinging into it, at one point
inside from his waist up—“quite a few” times.

          T.V.
testified that she had been in a relationship with Taylor for almost three and
a half years.  According to T.V., “words [were] exchanged” as she was driving
Taylor to Wilson’s house on August 24, 2011, Taylor exited the car and
walked the remaining distance to Wilson’s house, and she followed Taylor there
in her car.  T.V. honked her car horn repeatedly while parked in front of Wilson’s
house to get Taylor to come talk to her about a dispute over money, and the two
began arguing.  T.V. denied that the argument was ever “physical” and claimed
that she had pulled Taylor into her vehicle, that she was the aggressor, and
that she was not sure if she was scratched on her neck earlier in the day
during softball practice or when she pulled Taylor into the vehicle.  However, she
also acknowledged that Taylor kicked her car door, that his hand made contact
with her neck when he reached inside of the car, that she told police that
night that Taylor had scratched her, and that she had felt a burning sensation
from the scratch on her neck.  Looking at several photographs that were taken
that night of the scratch on her neck, she also acknowledged that it looked
like someone’s hand had been around her throat and had pulled on it.  T.V.
denied that she was assaulted that night, but she agreed that she had told
police that she had been assaulted.  She also confirmed that Taylor lived with
her and her son, that her son considered Taylor to be his father, and that
Taylor helped pay bills.

          Officer
Chris Herring responded to the disturbance and was told by T.V. that she had
been involved in a fight with Taylor and that he had scratched her neck.  T.V.
showed Officer Herring the scratch, which had wet blood on it, indicating that
it had occurred recently.  T.V. told Officer Herring that the struggle ensued
inside of her car when she told Taylor that she was going to call the police
and reached for her cell phone.  Officer Herring spoke with Taylor, who said
that the argument never became physical, and Jones, whose statements were
consistent with what T.V. had said.  Officer Herring therefore decided to
arrest Taylor for assault.

          Officer
Justin Holman responded to the disturbance after Officer Herring and testified
that T.V. said that she was scratched when Taylor entered her car and they
struggled.

          Wilson
testified that Taylor did not touch T.V.; instead, T.V. grabbed Taylor by the
shirt, dragged him inside of the car, and hit him in the face about six times.  He
did not recall pulling Taylor back from T.V.’s car.  Wilson confirmed
that he had been Taylor’s friend for five years.

          As
the evidence demonstrates, there was conflicting testimony about the
confrontation between Taylor and T.V., including whether Taylor scratched T.V.’s
neck.  But as the trier of fact, the jury had the option to resolve the
conflicting testimony in favor of the State and, in weighing the evidence, to
believe the evidence that favored the State and disbelieve, or assign less
weight to, the evidence that favored Taylor.  See Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Blackman, 350 S.W.3d at 595.  Further,
in light of the evidence, the jury could have concluded that by lunging and
swinging into T.V.’s car, possibly in an attempt to prevent T.V. from calling
the police, Taylor consciously disregarded a substantial and unjustifiable risk
that he would scratch T.V.

          Accordingly,
viewing all of the evidence in the light most favorable to the verdict, we
conclude that a rational jury could have found beyond a reasonable doubt that
Taylor recklessly scratched T.V.  See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Wise, 364 S.W.3d at 903.  We overrule Taylor’s
second point.

          Having
sustained Taylor’s first point, we modify the portion of his March 8, 2012
judgment of conviction and sentence ordering him to pay costs in the amount of
$1,979.50 to reflect that he pay costs in the amount of $227.00.  Having
overruled Taylor’s second point, we affirm the trial court’s judgment as modified.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MEIER and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 14, 2013









[1]See Tex. R. App. P. 47.4.